IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. DARNELL GORDON, et al., Defendants. | 4:17-CR-3004 FINAL ORDER ON RESTITUTION |

This matter is before the Court for a final determination of restitution to be awarded pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §§ 3613A, 3663A. The Court must determine the amount of restitution "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant[s]." 18 U.S.C. § 3664(f)(1)(A). The government has the burden of demonstrating the amount of loss sustained by a victim as the result of the offense. 18 U.S.C. § 3664(e). And the Court must resolve any dispute as to the amount or type of restitution by the preponderance of the evidence. 18 U.S.C. § 3664(e).

As discussed below, each of the defendants—with the exception of Darnell Gordon and Brenis Vaughn—has stipulated to a restitution obligation based on their respective contribution to the victims' losses.[1] *See* filing 473; filing 474; filing 480; filing 493; filing 500. The Court has carefully reviewed those stipulations, and finds them consistent with the evidence adduced at an April 24, 2018 evidentiary hearing. So, the stipulations that have been received will be adopted. The Court will reserve ruling with respect to the amount of

---

[1] Brenis Vaughn has previously been ordered to pay restitution and has not entered into a stipulation. *See* filing 257.

Brenis Vaughn's restitution upon receipt of his stipulation, or the setting of a hearing herein. As to Darnell Gordon, the Court will order restitution in the amount of $263,767.92.

The defendants in this case pled guilty to conspiring to commit bank larceny.[2] Filing 125; filing 160; filing 175; filing 276; filing 294; filing 315; filing 334; filing 352. Those charges stem from a series of incidents in which the defendants pulled ATMs through glass-enclosed buildings using ropes, chains, and stolen vehicles. As part of that scheme, the defendants identified and surveilled ATMs in Nebraska, South Dakota, Iowa, and Missouri. When the targeted business closed for the evening, the defendants broke in, often using hammers and rocks to shatter glass entryways. Filing 487 at 116. Once inside, the defendants placed a chain or rope around the ATM, and pulled it out using a stolen truck or rental vehicle. *See* filing 487 at 26. The defendants then transported the machine to a home or garage, disassembled it with heavy machinery, and stole the money inside. *See* filing 487 at 76.

Gordon was sentenced to 120 months' imprisonment for his role in the conspiracy. Filing 445 at 1. After sentencing, the Court held an evidentiary hearing to determine the amount, if any, of Gordon's restitution obligation. *See* filing 487. There, the government adduced testimony from Mathew Saad, an FBI agent assigned to the case, regarding Gordon's extensive involvement in the conspiracy. According to Saad, Gordon was directly involved in 32 larcenies resulting in $305,167.92[3] in victim losses. *See* filing 483 at 5. That conclusion, Saad testified, is supported by cooperating witness testimony, cell phone data,

---

[2] With the exception of Bajah Pittman, filing 361, who is not subject to this Order, and has no restitution obligation, filing 456.

[3] The government actually arrived at $307,042.92, but that appears—based on the incidents reported—to be a slight miscalculation.

recorded jail calls, and other evidence placing Gordon at the scene of each incident. *See* filing 487 at 19-20.

Gordon also testified at the evidentiary hearing. He admitted his participation in several of the larcenies, but denied involvement in others. *See* filing 489 at 2. Gordon also disputed the government's characterization of him as the group's "ringleader," describing the arrangement instead as a "loosely organized group of persons who took different roles from time to time." Filing 489 at 2. The Court, in significant part, does not find Gordon's testimony credible.

Based on the evidence adduced, the Court will order restitution in the amount of $263,767.92. That figure reflects Gordon's participation in, and total loss from, 28 larcenies addressed at the evidentiary hearing, which the government has established by a preponderance of the evidence. *United States v. Martinez*, 690 F.3d 1083, 1088–89 (8th Cir. 2012). Gordon was not, to be sure, solely responsible for each of those incidents. But it is clear from the evidence presented that he played a significant leadership role in recruiting and directing members of the conspiracy. *See* filing 487 at 57-58. So, Gordon will be responsible for the full restitution amount, subject to joint and several liability (addressed below), to reflect his "level of contribution to the victim[s'] loss[.]" 18 U.S.C. § 3664(h). *See United States v. Lipton*, 502 F. App'x 693, 694 (9th Cir. 2012); *United States v. Meredith*, 370 F. App'x 930, 934 (10th Cir. 2010).

## ATM LARCENIES

The Court heard evidence regarding Gordon's alleged involvement in 32 larcenies over a 2-year time span. The Court finds that the government has satisfied its burden with respect to the 28 incidents detailed below. The government has not satisfied its burden with respect to the remaining 4

incidents, and losses from those offenses will not be reflected in Gordon's overall restitution obligation.

### a. Gordon's involvement in 28 incidents

The Court finds that Gordon was involved in 28 larcenies. For each incident, the Court will provide (1) the name of the targeted business; (2) the date of the larceny; (3) the total amount of victim loss (which Saad confirmed by cross-referencing insurance claims, filing 487 at 25); and (4) the names of each defendant involved in the particular offense, other than Gordon, to the extent that information is available.

Also included in the table is the evidence linking Gordon to the particular incident. To that end, the Court has considered Saad's summation of cooperating witness testimony placing Gordon at the scene of each offense ("cooperating witness"). The Court has also considered Gordon's own testimony, in which he admitted participation in several specific offenses ("Gordon testimony"). And the Court has considered other evidence, such as jail calls and cell phone location data, placing Gordon at or near the location of at least 5 larcenies ("location data").

| Victim | Date of Offense | Total Loss | Codefendants | Evidence |
|---|---|---|---|---|
| Casey's General Store | 2/20/14 | $204.91 | Isaiah Brown | Cooperating witness |
| Phillip's 66 | 2/20/14 | $3,940.00 | Isaiah Brown | Cooperating witness |
| Sun Mart Lincoln, NE | 2/27/14 | $400.00 | Larry Gordon Isaiah Brown | Cooperating witness |
| Pump & Pantry Omaha, NE | 2/27/14 | $12,800.00 | Larry Gordon Bakari Hunt Isaiah Brown | Gordon testimony Cooperating witness |
| Centris Credit Union Omaha, NE | 2/28/14 | $406.00 | Larry Gordon Bakari Hunt Isaiah Brown | Cooperating witness |
| Great Escape Theater Omaha, NE | 3/05/14 | $14.000.00 | Larry Gordon Isaiah Brown | Cooperating witness |

| Location | Date | Amount | Names | Evidence |
|---|---|---|---|---|
| Bag & Save<br>Omaha, NE | 3/19/14 | $625.00 | Isaiah Brown<br>Larry Gordon | Cooperating witness |
| King Kong<br>Omaha, NE | 4/05/14 | $3,000.00 | Larry Gordon | Cooperating witness |
| D&S Express<br>Council Bluffs, IA | 4/05/14 | $350.00 | Larry Gordon | Cooperating witness |
| Casey's General Store<br>Omaha, NE | 4/10/14 | $4,110.47 | Isaiah Brown | Gordon testimony<br>Cooperating witness |
| Super Carnicia<br>Omaha, NE | 5/02/14 | $2,500.00 | Larry Gordon<br>Isaiah Brown | Cooperating witness |
| License Bureau<br>St. Joseph, MO | 5/04/14 | $4,500.00 | Larry Gordon<br>Isaiah Brown | Gordon testimony<br>Cooperating witness |
| Hy-Vee Gas<br>Omaha, NE | 5/24/14 | $1,000.00 | Larry Gordon<br>Isaiah Brown | Cooperating witness |
| C-Store<br>Lincoln, NE | 6/15/14 | $71,581.98 | Larry Gordon<br>Lyle Gordon<br>Isaiah Brown | Gordon testimony<br>Cooperating witness |
| Eddy's LaVista Mart<br>LaVista, NE | 7/15/14 | $3,000.00 | Isaiah Brown | Cooperating witness |
| On The Go<br>Lincoln, NE | 8/06/14 | $10,000.00 | Isaiah Brown | Cooperating witness |
| Get-N-Go<br>Sioux Falls, SD | 9/05/14 | $1,184.00 | Isaiah Brown<br>Wakonda Hazel | Cooperating witness |
| Casey's General Store<br>Waverly, NE | 4/30/15 | $10,549.13 | Wakonda Hazel | Cooperating witness |
| North Star Express<br>Lincoln, NE | 06/02/15 | $2,590.86 | Wakonda Hazel | Cooperating witness |
| Andy's Convenience Store<br>Omaha, NE | 6/08/15 | $6,930.00 | Wakonda Hazel | Cooperating witness<br>Location data |
| MoMo's Pizza<br>Lincoln, NE | 6/22/15 | $3,610.00 | Wakonda Hazel | Gordon testimony |
| U-Stop<br>Lincoln, NE | 6/24/15 | $1,157.89 | Wakonda Hazel | Cooperating witness |
| Walgreens<br>Lincoln, NE | 9/22/15 | $7,320.00 | Unidentified | Cooperating witness<br>Location information<br>Gordon testimony |
| Nehawka Bank<br>Union, NE | 9/25/15 | $7,571.49 | Lyle Gordon<br>Isaiah Brown<br>Cal McCoy<br>Wakonda Hazel | Cooperating witness<br>Location information |
| Casey's General Store<br>Des Moines, IA | 10/08/15 | $15,637.50 | Wakonda Hazel<br>Lyle Gordon<br>Brenis Vaughn | Gordon testimony |

| | | | | |
|---|---|---|---|---|
| Douglas County Treasurer Omaha, NE | 11/09/15 | $24,740.00 | Lyle Gordon | Cooperating witness |
| First State Bank Waverly, NE | 11/23/15 | $30,058.69 | Cal McCoy Lyle Gordon Wakonda Hazel | Cooperating witness Location information |
| Walgreens Lincoln, NE | 03/07/16 | $20,000.00 | Lyle Gordon Wakonda Hazel | Cooperating witness Location information |

*b. Remaining incidents*

There are 4 additional larcenies which, the government claims, Gordon directly participated in: U-Stop, Ashland, Nebraska (5/2/2015); Anderson Amoco, Omaha, Nebraska (7/30/2015); The Market, Topeka, Kansas (1/26/2016); and K-Mart, Sioux Falls, South Dakota (2/19/2016). These events do not appear in Gordon's presentence investigation report, and there is no corroborating witness testimony confirming his involvement. *See* filing 487 at 43, 47, 52, 54. Further, the government has not adequately connected these offenses to the underlying conspiracy. Accordingly, because the government has not carried its burden with respect to these 4 incidents, they will not be reflected in Gordon's restitution obligation.

*c. Conclusion*

Therefore, the Court finds that Gordon participated in 28 ATM larcenies, resulting in a total victim loss of $263,767.92. Gordon will be responsible for the full amount of restitution based on his significant leadership role in the conspiracy.

REMAINING DEFENDANTS

Each of the remaining defendants has stipulated to a restitution obligation based on their level of contribution to the victims' losses. § 3664(h). As structured, the defendants' stipulations account for a percentage of the overall restitution obligation attributable to Darnell Gordon. So Larry Gordon,

for example, has stipulated to "twenty-five percent of Darnell Gordon's final restitution order" based on his involvement in 15 larcenies. Filing 480 at 2. Cal McCoy has stipulated to 10 percent of Darnell Gordon's final restitution based on his role in 2 incidents. Filing 500 at 2. Bakari Hunt has stipulated to 2.5 percent of Darnell Gordon's restitution obligation based on his role in 1 incident. Filing 474 at 2. And the rest of the defendants have stipulated to 20% of Gordon's restitution obligation based on their respective involvement. *See* filing 473, filing 477, filing 493.

The stipulations are consistent with the evidence adduced, and will therefore be adopted. Accordingly, the remaining defendants' restitution obligations will be ordered as followed:

- Larry Gordon - $65,941.98 (25%)
- Lyle Gordon - $52,753.58 (20%)
- Isaiah Brown - $52,753.58 (20%)
- Cal McCoy - $26,376.79 (10%)
- Bakari Hunt - $6,594.19 (2.5%)
- Wakonda Hazel - $52,753.58 (20%)

Those amounts, again, reflect a percentage of Gordon's restitution obligation, for which he (Darnell Gordon) is jointly and severally liable. § 3664(h).

PAYMENT SCHEDULE

Under the MVRA, the Court must specify "the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). A payment schedule may require a single, lump sum payment; payments at specified intervals; in-kind payments; or a combination of payments at specified intervals and in-kind payments. § 3664(f)(3)(A). The

Court, in determining the manner and schedule of payment, must consider the statutory factors enumerated in § 3664(f)(2), which include the defendants' financial resources, assets, projected income, and financial obligations. § 3664(f)(2)(A)-(C).

There is no indication in the record that any defendant is capable of satisfying their respective restitution obligation in a single, lump sum payment. In fact, the opposite is true—each presentence report suggests an inability to pay. *See United States v. Gray*, 175 F.3d 617, 618 (8th Cir. 1999). So, the Court will order the defendants to pay monthly installments of $100, or 3% of their gross income—whichever is greater. Any payments made shall be applied in the following order of priority: special assessment; restitution; and other penalties. Payments shall be distributed by the Clerk of the Court on a *pro rata* basis. All criminal monetary penalty payments, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, shall be made to the Clerk of the Court. Interest shall not accrue on the criminal monetary penalty. The defendants shall inform the Court and the Attorney General of any material change in their economic circumstances affecting the ability to make monthly installments, or increase the monthly payment amount, as ordered by the Court. The United States Attorney is directed to provide the Clerk of the Court with the contact information for victims that is necessary to distribute restitution funds.

IT IS ORDERED:

1. Defendant Darnell Gordon shall pay $263,767.92 in restitution, jointly and severally liable with all the other defendants listed in this order. To satisfy that obligation,

Darnell Gordon shall pay $100.00 a month, or 3% of his gross income, whichever is greater.

2. Defendant Lyle Gordon's restitution stipulation ([filing 473](filing 473)) is adopted. Lyle Gordon shall pay $52,753.58 in restitution, jointly and severally with Darnell Gordon. To satisfy that obligation, Lyle Gordon shall pay $100.00 a month, or 3% of his gross income, whichever is greater.

3. Defendant Bakari Hunt's restitution stipulation ([filing 474](filing 474)) is adopted. Bakari Hunt shall pay $6,594.19 in restitution, jointly and severally with Darnell Gordon. To satisfy that obligation, Hunt shall pay $100.00 a month, or 3% of his gross income, whichever is greater.

4. Defendant Isaiah Brown's restitution stipulation ([filing 477](filing 477)) is adopted. Isaiah Brown shall pay $52,753.58 in restitution, jointly and severally with Darnell Gordon. To satisfy that obligation, Brown shall pay $100.00 a month, or 3% of his gross income, whichever is greater.

5. Defendant Larry Gordon's restitution stipulation ([filing 480](filing 480)) is adopted. Larry Gordon shall pay $65,941.98 in restitution, jointly and severally with Darnell Gordon. To satisfy that obligation, Larry Gordon shall pay $100.00 a month, or 3% of his gross income, whichever is greater.

6. Defendant Wakonda Hazel's restitution stipulation (filing 493) is adopted. Wakonda Hazel shall pay $52,753.58 in restitution, jointly and severally with Darnell Gordon. To satisfy that obligation, Hazel shall pay $100.00 a month, or 3% of her gross income, whichever is greater.

7. Defendant Cal McCoy's restitution stipulation (filing 500) is adopted. Cal McCoy shall pay $26,376.79 in restitution, jointly and severally with Darnell Gordon. To satisfy that obligation, McCoy shall pay $100.00 a month, or 3% of his gross income, whichever is greater.

8. All criminal monetary penalty payments, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, shall be made to the Clerk of the Court.

9. Payments made by the defendants shall be applied by the Clerk of the Court in the following order of priority: (1) special assessment, (2) restitution, and (3) other penalties.

10. The Clerk of the Court shall distribute restitution to the identified victims *pro rata*.

11. The United States Attorney is directed to provide the Clerk of the Court with the necessary contact information for the identified victims so that the Clerk can distribute restitution funds.

12. The defendants shall inform the Court and the Attorney General of any material change in their economic circumstances affecting the ability to make monthly installments, or increase the monthly payment amount, as ordered by the Court.

Dated this 10th day of August, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge